UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
CHRISTOPHER CASTAGNA and GAVIN CASTAGNA,    )
   Plaintiffs     )
v.    )   CIVIL ACTION
HARRY JEAN, KAMAU PRITCHARD, STEPHEN SMIGLIANI,   )   NO.  1:15-cv-14208-IT
TERRY COTTON, BRENDAN WALSH, MICHAEL BIZZOZERO,   )
JAY TULLY, WILLIAM SAMARAS, DONALD WIGHTMAN,   )
JON-MICHAEL HARBER, CLIFTON HAYNES, KEITH KAPLAN,   )
DARAN EDWARDS, GAVIN MCHALE, JEAN MOISE ACLOQUE,)
ANTHONY TROY, GARY BARKER, RICHARD DEVOE,   )
JOHN DOE, and JAMES DOE, Individually   )
   Defendants     )

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Christopher Castagna and Gavin Castagna (hereinafter, collectively, the

"Castagnas") hereby set forth their opposition to Defendants' motion to dismiss.  The Castagnas

do not oppose the Defendants' motion with regard to the §1983 malicious prosecution claim set

forth in Count I [*See* Doc. No. 44, pp. 11-12].

> **A.  Where the Castagnas Have Alleged that the Defendant Officers Entered Plaintiff Christopher's Home in Violation of the 4th Amendment, the Castagnas Have Stated a Proper §1983 Unlawful Entry Claim Against All Defendants in Count I.**
>
> **1.  The Castagnas Have Adequately Alleged the Actions of the Defendant Officers in Entering the Apartment, and, Through Discovery, the Castagnas Expect to Be Able to Identify With More Particularity Which Defendant Officers Entered the Apartment and When They Entered.**

Essentially, all of Defendants' arguments in their motion to dismiss center on whether the

Complaint meets a two part plausibility test under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The Complaint may not rely upon

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements…." *Iqbal*, 556 U.S. at 678-79.  Second, the Court must "take the complaint's well-

pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  The term "plausible" means more than a mere possibility.  *Jorge v. Galarza-Soto*, 124 F.Supp.3d 57, 64  (D.P.R. 2015).  "This 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Id*. at 64;  *quoting Twombly*, 550 U.S. at 556.

Defendants argue that the Castagnas only allege the specific acts of five Defendants (Cotton, Edwards, Troy, Walsh and Barker) in the Complaint, and that there are no factual allegations against the remaining Defendants, other than that they work for the Boston Police Department.  [pp. 2-3].  Defendants seem to claim that, as to the remaining officers, the unlawful entry claim in the Complaint should be dismissed because Plaintiffs have not identified which officers made the allegedly unlawful entry.  [*Id*. at p. 3].

In Paragraph 26 of the Complaint [pp. 6-7], the Castagnas define the term "Defendant Officers" to refer to Defendants Jean, Pritchard, Smigliani, Cotton, Walsh, Bizzozero, Tully, Samaras, Wightman, Harber, Haynes, Kaplan, Edwards, McHale, Acloque, Troy, Barker, John Doe (a pseudonym) and/or James Doe (a pseudonym)[1].   That term, "Defendant Officers," is broad and intended to encompass the actions of various officers who, at this early point in the case, cannot be identified by name.

At approximately 7:38 p.m., more than one and one half hours after a 911 call from an uncertain location complaining of a loud party, the Castagnas continued their gathering at the home of Christopher Castagna in a quiet fashion.  [¶29].  One of the Defendant Officers, whose physical description is provided in the Complaint, entered the home without permission.  [¶30]

---

[1]  The definition of "Defendant Officers" does not include Richard DeVoe, who signed as complainant on the Criminal Complaint pertaining to both Plaintiffs.

2

Other officers entered the home at that time, and, still more entered at a later point. [¶¶33, 41].

Plaintiffs relied upon the police report, for the most part, in identifying the Defendant Officers. Through the Complaint, the Castagnas have provided Defendants, and the Court, with thirty-one detailed paragraphs describing the incident giving rise to Plaintiffs' wrongful arrests. This is not a case where the allegations are vague and conclusory, as in *Bass v. Vail*, 2013 WL 57811-1 (D.Ariz. Oct. 23, 2013), upon which Defendants rely. The Castagnas are simply uncertain, at this pre-discovery stage, as to when the various Defendant Officers entered the home, and, further, as to the identities of the Defendant Officers who took certain acts in the home (some of whom, like the one who first entered the home, are identified by physical description). [¶¶24, 31, 33]. The Castagnas did identify Edwards [¶¶33-35, 37, 38, 42, 43, 46-48, 50 and 54], Cotton [¶¶33, 35], Barker [¶¶43, 49], Troy [¶52], and Walsh [¶56] as being unlawfully in the home and taking certain actions. Moreover, the Complaint notes that officers formed a human wall around Christopher. [¶48]. The implication is that most, if not all, of the Defendant Officers entered the home. Through modest discovery, the Castagnas should be able to clarify who did what.

Courts give "some latitude" in denying motions to dismiss where the defendants control a material part of the information. *Jorge*, 124 F.Supp.3d at 67 *quoting Garcia-Catalan v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). "In section 1983 cases, such as the present case, it is often the case that a significant portion of evidence is within the control of the police officers." *Jorge,* 124 F.Supp.3d at 67. In *Garcia-Catalan*, Garcia-Catalan fell because of a liquid on the floor of a commissary aisle. *Garcia-Catalan*, 734 F.3d at 101-102. The government sought dismissal because Plaintiff failed to allege that the premise's owner/occupier had requisite knowledge. *Id*. The Court held that the complaint was sufficient to move forward. *Id*. at 103.

Additionally, the Court noted that that it was reasonable to suspect that "modest discovery may provide the missing link" to allow Plaintiff to go to trial. *Id*. at 104, *quoting Menard v. CSX Trans., Inc*., 698 F.3d 40, 45 (1st Cir. 2012).

In *Jorge*, an excessive force case, Jorge was shot in the back while on the ground after a police pursuit of a vehicle in which Jorge was a passenger. *Jorge*, 124 F.Supp.3d at 63. The complaint alleged that Officer Galarza acquiesced in, or was deliberately indifferent to, the use of the firearm on Jorge. *Id*. The Defendants sought dismissal because Plaintiff failed to allege that Galarza used any force against Plaintiff during the arrest. *Id*. at 67. Denying the motion to dismiss, the Court held that discovery may show that Galarza assisted in the arrest. *Id*. at 67.

Through modest discovery, the Castagnas should obtain the identities, within the control of the Defendants, of the Defendant Officers who entered the premises, and at what time, and what action each such officer took. *See Brenes-LaRoche v. Davila*, 682 F.Supp.2d 179 (D.P.R. 2010)(Motion to dismiss denied, and discovery permitted, where officers removed badges and attacked Plaintiff in group effort). Here, the Complaint's use of the term "Defendant Officers" as a shorthand list of officers and two potential John Doe defendants is sufficient description. *See Pehalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 596 (2011)(Case remanded for discovery where complaint adequately alleged that someone, although not parties named, fired Plaintiff based upon party affiliation); *Loosier v. Unknown Med. Doctor*, 435 F.App'x 302, 307 (2010)(*per curiam*); *Morgan v. Hubert*, 335 F.App'x 466, 473 (5th Cir. 2009). It is important to note, though, that even if some of the Defendant Officers did not enter the home, they still acted in concert with the other officers, and as a part of a conspiracy. In the event that the Court denies the motion to dismiss, Plaintiffs will engage in discovery to obtain the identifications, times of entry, and specific acts of each officer.

4

### 2. There Were No Exigent Circumstances.

The Defendants assert defenses as grounds for the motion to dismiss that are, at this stage, irrelevant and improper. The defense of exigent circumstances may be suitable in a motion for summary judgment, or at trial, but the adequacy, or even ultimate success, of defenses cannot result in the dismissal of a complaint on a motion to dismiss except in rare circumstances. Defendants argue that the entries of Defendants Barker, Troy and Walsh were justified by exigent circumstances; to wit, reported underage drinking, the presence of marijuana, and an altercation between Plaintiffs and Edwards and Cotton. [p. 3].

#### i.    There Was No Report of Underage Drinking.

Mass. Gen. Laws c. 138 §34C prohibits anyone under 21 years of age from possessing alcohol. Under that statute, "[a] police officer may arrest without a warrant any person who violates [the statute]." *Id.* Even so, Fourth Amendment protections still apply. *Howes v. Hitchcock*, 66 F.Supp.2d 203, 211 (D. Mass. 1999). "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006), *quoting Mincey v. Arizona*, 437 U.S. 385, 393-394 (1978). Probable cause alone does not justify a warrantless intrusion into a home. *Buenrostro v. Collazo*, 973 F.2d 39, 43 (1st Cir. 1992). The First Circuit has recognized an emergency aid exception, under which an officer may enter a home if he/she reasonably believes that immediate action is needed to assist an injured person or to protect another. *U.S. v. Beaudoin*, 362 F.3d 60, 66 (1st Cir. 2004), *rev'd on other grounds sub nom. Champagne v. United States*, 543 U.S. 1102 (2005); *Brigham City*, 547 U.S. at 403.

The Defendants argue that Barker, Troy and Walsh were permitted to enter without a

5

warrant because of a need to render emergency assistance and to prevent destruction of evidence. [p. 3-4].   That argument, set forth on pages 3 through 7 of Defendants' brief, sidesteps the wrong that is alleged and goes beyond the facts that are alleged in the Complaint.  In the Complaint, the Castagnas repeatedly allege in Paragraphs 30-41 that the police entered without right, without warrant, warning, basis or exigent circumstances.  Those paragraphs set forth detailed facts to withstand an *Iqbal* attack and to justify a civil rights action under the Fourth Amendment.

Defendants repeatedly claim that Plaintiffs "admit" that officers were informed via a 911 call that partygoers were not 21.  Not so.  The Complaint alleges that an officer *said* there was a complaint of underage drinking, not that there was indeed such a complaint.  [¶32].  Plaintiffs claim that Defendant Officers should never *at any time* have entered the home.  Edwards and Cotton entered with the first wave of officers. The facts alleged in the complaint revealed no justification for the initial entry into the home by police.  When the Defendants wrongfully enter the premises, their unlawful entry cannot later be justified by any alleged acts that occurred within the premises.

With regard to Barker, Defendants claim Barker justifiably entered the home because of a physical altercation between (1) Edwards and another officer and (2) Christopher and an attendee, John Doran, in the bedroom before Barker entered.   [p. 5].  The Complaint alleges assaultive behavior by officers, but no mutual altercation whatsoever.  The Complaint first refers to Barker in Paragraph 42, when Barker, Edwards and other officers isolate Christopher from other attendees.  Barker, like the other officers, should never have been in the home at all.  The Complaint does not allege that Barker, from outside of the home, saw an altercation in the bedroom necessitating his entry.  *See Brigham City*.  The Complaint alleges that Barker illegally

entered, and he cannot justify his entry by a post-entry event in the home.  The Complaint alleges no wrongful conduct by Christopher, Doran or any other attendee to justify intrusion. Defendants are adding "facts" not in the Complaint that cannot be considered by this Court under *Iqbal*.

The Defendants' reliance upon *Brigham City* is misplaced.   The facts of *Brigham City* are different from this case.  In *Brigham City*, before entry, police heard a fight, observed juveniles drinking and saw an altercation.  *Brigham City*, 547 U.S. at 406.  Here, in the case at bar, the location from which the 911 call was placed is unclear, and, at any rate, the call arrived in the early evening, more than 1.5 hours before the police responded.  [¶¶28, 29].  At the time of the arrival of the police at the Castagna home, the gathering of approximately fifteen persons of legal drinking age was non-disruptive and orderly.  [¶¶27, 29, 31]. The Complaint does not justify the emergency aid exception.

### ii. There Was No Allegation that Officers Detected the Odor of Marijuana From Outside the Home.

The Defendants claim that Barker was justified in entering the home because of the belief that a minor was subjected to marijuana smoke.  [p. 5].   The Complaint says that Edwards said he "smelled drugs.  [¶37].  Nowhere do Plaintiffs allege or acknowledge that the apartment actually smelled of marijuana.  Moreover, there were no minors.  There was no allegation of the presence of marijuana smoke before police entered.  The police entered the kitchen, where several adults were present, without first obtaining permission.  [¶30].  Barker's entry cannot be justified by Edwards earlier entry into Christopher's bedroom, where Edwards allegedly said he smelled marijuana.  With no minors found in the home, and with no confirmed viewing of minors before entry in the home, Barker had no reasonable belief of the presence of minors or need of minors to be protected from marijuana smoke to justify entry.

The Defendants' reliance upon *Martins* is misplaced.  In that case, an officer investigating a shooting detected the strong odor of marijuana while approaching a home. *Martins*, 413 F.3d at 144.  A child opened the door to the apartment, which was filled with marijuana smoke.  *Id*.  The Court found that the officer's entry into the home (which later revealed the defendant) was thereby justified where the child was exposed to toxic smoke from the marijuana and was in the presence of a crime.  *Id*. at 147.

### iii.  Defendants Troy and Walsh Unlawfully Entered the Home.

Defendants appear to argue that Defendants Troy and Walsh justifiably entered because Edwards and another officer were using excessive force against Christopher, and because there were other altercations in the home. [pp. 5-6].  The Complaint, however, shows that Troy beat attendee Brian Fletch, and that Walsh beat attendee Carla Viega, not that they entered the home to help the Castagnas.  [¶¶52, 56].  If Defendants are now arguing that Troy and Walsh entered the home in order to protect Christopher, Gavin and other attendees from Edwards' and other officers' excessive, they should revise their respective answers to the Complaint.  Defendants are, again, adding facts that do not appear in the Complaint.   The Complaint does not specify precisely when Troy and Walsh entered the home, and there are no present facts permitting their claim that they entered only after altercations began.

### iv.    As to Count I, the Complaint Does Not Demonstrate that the Entry of Barker, Troy and Walsh into the Home Was Lawful in Order to Prevent the Destruction of Marijuana or Underage Drinking Evidence.

On pages 3-4 and 6 through 7 of their memorandum of law, Defendants argue that Barker, Troy and Walsh justifiably entered the home.  Plaintiffs' Complaint alleges no justification for those acts.  Defendants improperly add facts to justify dismissal.

When Barker, Troy and Walsh entered the home will be revealed during discovery –

8

perhaps during a deposition, or through photographs, or through identification in a video.  There is no allegation in the Complaint that, before entry, any officer saw underage drinking or smelled marijuana.  In order to enter the home, the officers needed to have probable cause that a crime was being committed and/or was about to be committed.  When police approached, the home contained a quiet, law-abiding gathering of persons of legal age.  Defendants rely upon *Howes*. *Howes*, 66 F.Supp.2d at 207.  There, police received numerous prior complaints about parties at the home of two underaged boys. *Id*.  The ex-husband had told a police officer that he believed that there was regular drinking and drug abuse at the home.  *Id*.  One boy was arrested for marijuana.  *Howes*, 66 F.Supp.2d at 207.  An officer saw teenagers arriving or leaving the home with bottles and cans of beer during a 2.5 hour surveillance.  *Id*.  Nineteen teenagers were arrested at the home. *Id*. at 208.  There, the Court found exigent circumstances because teenagers might flee and/or destroy evidence.  *Id*. at 215.

The Complaint here does not allege that the officers had any probable cause before entering the home.  There is no allegation of prior arrests or of teenagers walking in and out of the home with bottles of beer.  The Complaint clearly states that no one was underage and that all looked to be over the legal age.  [¶27].  There is no allegation that anyone living in the home was a minor.  Defendants simply seek to add facts in order to justify the entry.  Defendants cannot argue that exigent circumstances exist until discovery is complete unless the exigent circumstances are based upon facts alleged in the Complaint – not facts the Defendants wished Plaintiffs had alleged.  That argument may be appropriate at the summary judgment stage, depending upon the facts developed, but not on the basis of the Complaint before the Court.

### 3. As to Count I, the Defendants Are Not Protected by Qualified Immunity.

Defendants argue that officers who entered the home are entitled to qualified immunity

9

because they had probable cause to believe that a crime was being committed.  [p. 7].  The Defendants claim, "it is not clearly established in Massachusetts that a party with underage drinking is not an exigent situation permitting warrantless entry." *Id.* The premise of Defendants' argument is false, as the Complaint does not support the claim that the officers entered the home because of underage drinking.  There is no allegation that anyone attempted to destroy any evidence of drinking, or that anyone ran.  There is no prior knowledge before entering the house that there had been underage drinking there in the past, or that the occupants of the house were underage.  The fact that some officers were in the house when other officers entered does not support any rational inference that the presence of earlier police officers implies consent to enter.  The knowledge of the earlier officers that they were specifically refused consensual entry is attributable to all later officers. *See Whitely v. Warden*, 401 U.S. 56, 5680 (1971)(officers "are entitled to act on the report of other … officers, but … 'an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make an arrest.'")

In assessing whether qualified immunity applies, courts employ a two-part test: "(1) whether the facts alleged by the plaintiff make out a violation of a constitutional right; and, if so (2) whether the right was clearly established at the time of the alleged violation." *MacDonald v. Town of Eastham*, 745 F.3d 8, 12 (1st Cir. 2014).   "Under the second prong of the test, the analysis involves two questions: (1) whether the legal contours of the constitutional right were sufficiently clear; and (2) whether in the specific factual context of the case, the violation would have been clear to a reasonable official." *Bazinet v. Thorpe*, 2016 U.S. Dist. LEXIS 72702 (D.Mass. June 3, 2016).

The constitutional right alleged here involves the unlawful, warrantless intrusion into

Christopher's home without probable cause, which is protected by the Fourth Amendment.  The Court next examines whether it would be clear to a reasonable officer that the conduct was unlawful under the circumstances.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The Court looks at whether there were similar cases or general Fourth Amendment principles which gave the officer fair warning of the unlawful conduct.  *Jennings v. Jones,* 499 F.3d 2, 16 (1st Cir. 2007).  There does not have to be a case directly on point for a right to be clearly established, but "existing precedent must have placed the …. constitutional question beyond debate."  *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011) *quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The law is clear that officers cannot simply walk in on a quiet party.  "Warrantless entries into a home "are per se unreasonable unless they fall within one of the few narrowly drawn exceptions to the …. warrant requirements [of the Fourth Amendment.]"  *Payton v. New York*, 445 U.S. 573 (1979);  *Commonwealth v. Sueiras*, 72 Mass. App. Ct. 439, 442-43;  *quoting Commonwealth v. Amaral*, 16 Mass. App. Ct. 230, 233 (1983) *citing Katz v. United States*, 389 U.S. 347, 357 (1967);  *Commonwealth v. DeGeronimo*, 38 Mass.App.Ct. 714 (1995)(no exigent circumstances to justify warrantless entry into defendant's apartment on suspicion of drunk driving);  *Welsh v. Wisconsin*, 466 U.S. 740 (1984)(warrantless arrest of petitioner in home, even with probable cause, was improper absent exigent circumstances).  The Defendants seek to claim that their actions were justified by exigent circumstances in light of the alleged underage drinking on the premises.  The *Howes* case itself pointed out that "[w]hile this case is a useful wake-up call to the police that the Fourth Amendment applies to police home entries to stop teenage drinking parties, the question here is whether an objectively reasonable officer could have believed that exigent circumstances justified his entry into the Howes residence."  *Howes*, 66 F.Supp.2d at 215.  Police officers cannot simply barge in on any suspected teenage drinking

11

party.  If so, then officers could simply claim that they believed that any party (like the one in the case at bar) included underage drinkers so that they can enter without a warrant.

In *Howes*, as discussed above, the officer had significant information regarding underage drinking before entering the premises.  *See Suieras*, 72 Mass. App. Ct. at 442 (where officer observed juveniles leaving house with alcohol, exigent circumstances justified entering home).  Here, at best, the Complaint identifies a comment by an officer of a complaint of underage drinking, but nothing more, and the comment itself is contradicted by the lack of evidence of a complaint of underage drinking in the police report.  [¶32].   The Complaint sets forth no objective facts known to the police which gave probable cause to believe that there was underage drinking at the home.  Taking all reasonable inferences in favor of the Castagnas, as this Court must, the Defendant Officers had no *information* concerning any underage drinking at any time before or during the incident.  *See In re Allaire Corp. Secs. Litig.*, 224 F.Supp.2d 319, 324 (D.Mass. 2002). The Complaint did not include any observations from the officers outside that there was any violence or hiding of drugs taking place in the home which may have justified a warrantless entry.  *See Brigham City*.  An objectively reasonable officer would know that, absent probable cause or exigent circumstances, the officers could not enter Christopher's home, and so Plaintiffs' claims are not barred by qualified immunity.

Defendants attempt to add additional facts to their analysis.  For instance, Defendants write that Barker, Troy and Walsh "observed through the open door that other officers were already inside." [p. 9].  They write about Edwards and Cotton focusing upon Christopher's bedroom, leaving other persons unattended. *Id.*  The Complaint makes no mention of what Barker, Troy and Walsh observed at all, and such added allegations do not belong in a motion to dismiss.   Defendants' repeated efforts to add facts highlight the need for discovery in this case.

12

**B.  In Count I, the Castagnas Plausibly Allege False Arrest §1983 Claims Against All Defendant Officers, Who Acted Jointly and In Concert.**

Defendants argue that the Castagnas' §1983 false arrest claims fail because, other than as to Edwards, (1) the Complaint does not allege that the Defendant Officers seized Christopher, and (2) the Complaint does not allege who arrested Gavin.  The Complaint alleges that the Defendant Officers, acting jointly and in concert with one another, and/or individually, arrested Plaintiffs without probable cause in violation of §1983.  [¶73].  An arrest made in bad faith and without probable cause states a claim under Section 1983.  *Landrigan v. Warwick*, 628 F.2d 736, 743 (1st Cir. 1980).

Defendants seek to argue that Christopher was arrested at the time Edwards *told* Christopher that Edwards "smelled drugs."  [¶37;  Doc. No. 44, p. 9].  The Complaint does not allege that Edwards actually did smell the drugs he *said* he smelled.  At any rate, Christopher was only issued a civil citation for possessing less than one ounce of marijuana under Mass. Gen. Laws. c. 94C §32L, which is not an arrestable offense.  Edwards threatened to arrest Christopher for keeping a disorderly house, and one of the officers (believed to be Edwards) slammed Christopher to the floor behind a wall of other officers.  [¶¶38,48, 50].   With respect to Gavin, the Complaint alleges that several officers beat him and then arrested him. [¶53].  Certainly, Christopher and Gavin were under arrest when they were beaten and handcuffed.  As to which specific officer(s) actually placed the handcuffs on Christopher or Gavin, discovery will be needed, but it is clear from the Complaint that the Defendant Officers acted in concert in seizing and arresting the Castagnas.   Dismissal of these claims is not warranted.

**C.  In Count I, the Castagnas Have Plausibly Alleged §1983 Claims Based Upon a Failure to Investigate Where Defendants Destroyed Evidence in Violation of the First, Fourth and Fifth Amendments.**

The Castagnas allege that the Defendant Officers failed to conduct a proper investigation.

One of the officers, believed to be Edwards, threatened Christopher with an arrest in Christopher's bedroom in response to Christopher and John Doran openly recording the incident, and the police told Christopher that he could be arrested for recording. [¶38]. The Defendant Officers, upon information and belief, violently targeted individuals, like Gavin and Feltch, who were openly recording with their cellphones. [¶¶51-53]. One officer punched the cellphone in Gavin's hand. [¶53]. The Defendant Officers, in a concerted effort to hide their wrongful conduct, stole phones belonging to Christopher and attendee Justin Shaughnessy, and deleted recordings from phones belonging to Gavin and Joseph Bain. [¶57]. All of the above actions constitute violations of Plaintiffs' First and Fourth Amendment rights. *Glik*, 655 F.3d at 84,88 (2011)(Filming police activity in public place protected under First and Fourth Amendment); *Robinson v. Fetterman,* 378 F.Supp.2d 534 (E.D. Pa. 2005)(arrest of individual filming police activities from private property violated First Amendment). By taking and destroying the recordings, the Defendant Officers failed, as a part of their investigation, to develop pertinent exculpatory information regarding the incident, and thereby denied Plaintiffs due process protections under the Fifth Amendment. *See Killian v. United States*, 368 U.S. 231 (1961); *Brady v. Maryland*, 373 U.S. 83 (1963)(bad faith destruction of exculpatory evidence violates a suspect's due process rights).

> **D.   In Count I, the Castagnas Have Plausibly Stated §1983 Claims Grounded in First Amendment Violations.**

Defendants claim that Plaintiffs have alleged no cognizable First Amendment claim where Christopher's right to record video was not interfered with, and no named Defendant seized Gavin's cell phone. [p. 12]. The Complaint fairly alleges that the Defendant Officers, individually or in concert, blocked Plaintiffs and others from recording the incident, and the allegations fully support a First Amendment claim. *See Glik, Robinson*. The facts contained in

the complaint are:  Some Officers told Christopher that he could be arrested for recording video. [¶40];  an officer, believed to be Edwards, lunged to grab Christopher's phone and to stop the recording  [¶38];  Christopher gave the phone to his girlfriend, Samantha Pratt, who, in turn, gave it to Gavin, who continued recording with Gavin's phone and Christopher's phone.  [¶42]; It is a fair inference that Christopher gave his phone to Pratt presumably so that she could continue to record.  Defendant Officers appeared to target people, like Christopher, Gavin and Feltch, who were recording.  [¶¶51-53].  Some recordings were deleted; some phones disappeared.  [¶¶57]. These are particulars enough to satisfy the *Iqbal* requirements.

### E.  Plaintiffs Have Plausibly Stated a  §1983 Conspiracy Claim in Count II.

Defendants claim that the Complaint does not offer facts to support a conspiracy.  [p. 13]. The Castagnas cannot be expected to discern precisely what each of the seventeen officers did during the course of a chaotic incident where they were arrested.  Through discovery, the Castagnas expect to develop further facts to clarify what each officer did.  Plaintiffs plausibly alleged, though, that some or all of the Defendant Officers went into Plaintiffs' home without permission, and formed a wall around Christopher – behind which Christopher was beaten. [¶48]  Several Officers beat Gavin. [¶53].  The officers worked together to prevent Plaintiffs and others from recording Defendants' wrongful acts, and to seize and destroy the recordings.  [¶¶51-53, 57].  The Complaint alleges, in several places, that the Defendants acted in concert [¶¶48, 50, 57, 73, 78, 83, 87, 91, 99].  In terms of rights infringed, the Complaint clearly specifies that the officers conspired to, among other things, make an unlawful entry into the home without a warrant and without probable cause or exigent circumstances, use excessive force, and deprive the Castagnas of their First, Fourth and Fifth Amendment rights.  [¶78].

Defendants then argue that the §1983 conspiracy claims fail because, according to

15

Defendants, the officers cannot conspire with one another under the intracorporate conspiracy doctrine, which, in essence, provides that a corporate officer cannot conspire with (members of) his or her own corporation. [pp. 13-14]. That doctrine is inapplicable to the case at bar. The First Circuit has held that the doctrine should not be read broadly because most cases applying it have been in the antitrust field. *Limone v. United States,* 336 F.Supp.2d 18, 50-51 (D. Mass. 2004*) quoting Stathos v. Bowden*, 728 F.2d 15, 20-21 (1st Cir. 1984)(citations omitted)("Indeed, we do not see why [the doctrine] should extend – if at all – beyond the ministerial acts of several executives needed to carry out a single discretionary decision."). In *Stathos*, the First Circuit declined to extend the doctrine to §1985 conspiracy civil rights matters. *Id*. at 21. In *Limone*, where prisoners were convicted of murder and served more than thirty years before the FBI admitted that perjured information was used to secure their convictions, the Court found that the intracorporate conspiracy doctrine did not bar Plaintiffs' civil conspiracy claims. Civil rights conspiracies are actionable under §1983 with proper facts and a deprivation of a constitutional right. *Cote v. Town of Millinocket*, 901 F.Supp.2d 200, 247 (D. Me. 2012); *see e.g. Williams v. City of Boston*, U.S. Dist. LEXIS 187785 (D. Mass. Aug. 7, 2012); *Cote*, 901 F.Supp.2d at 247; *Correia v. Town of Framingham*, 969 F.Supp.2d 89, 97-98 (D. Mass. 2013). As a result, the Castagnas have plausibly alleged a §1983 conspiracy claim in Count II in which the Defendant Officers conspire with one another.

   **F. Plaintiffs Have Alleged Proper Claims Under Mass. Gen. Laws c. 12 §11H and I Against All Defendant Officers (Count III).**

Defendants claim, wrongfully, that Plaintiffs have failed to assert sufficient facts as to the "threats, intimidation and/or coercion" element of the Massachusetts Civil Rights. [pp. 15-16]. They are wrong. Officers in this case, in concert, sought to prevent Plaintiffs from exercising their First Amendment rights by, among other things, Edwards' actions threatening Christopher

with arrest for recording and lunging for Christopher's cellphone, an officer wrongfully telling Christopher that they could be arrested for recording, and attacking people who were recording [¶¶38, 29].  Attacking people who were recording is coercive.  [¶¶47-53].  Turning off the lights caused great fear to the attendees.  [¶46].  Forming a human wall between Christopher and the attendees was threatening.   The Castagnas have adequately pled the "threats, intimidation or coercion" element of a claim under Mass. Gen. Laws c. 12 §11I.

### G.  The Castagnas Have Plausibly Pled a Claim for Common Law Conspiracy to Violate Mass. Gen. Laws c. 12 §11I (Count IV).

The Defendants next argue that Plaintiffs have not established a common law conspiracy to violate the Massachusetts Civil Rights Act.  [pp. 16-17].  Plaintiffs incorporate herein by reference the arguments made herein regarding conspiracies and the Massachusetts Civil Rights Act.  The officers' conduct demonstrates that they were acting in concert during their entry, subsequent beating and arrest of the Castagnas, and coercively sought to prevent Castagnas and others from exercising their First Amendment right to record.  These facts plausibly state a claim for conspiracy to violate the Massachusetts Civil Rights Act in Count IV.

### H.  The Castagnas Have Plausibly Alleged a False Imprisonment Claim in Count V.

Defendants claim no false imprisonment.  [pp. 17-18].  "The tort of false imprisonment requires an unlawful restraint of a person's freedom of movement by force or threats…. Restraint by a police officer will constitute false imprisonment unless the police officer had a legal justification." *Rose v. Town of Concord*, 971 F.Supp. 47 (D.Mass. 1997);  *Wax v. McGrath*, 255 Mass. 340, 342 (1926).   The question is whether the person was free to leave. *See Vassallo v. Town of Wilmington*, 2003 Mass. Super. LEXIS 78,  *7 (Mass. Super. Ct. 2003).  Here, officers in concert formed a wall around Christopher, threw him to the ground, placed a foot on his neck, beat him and arrested him.  [¶50].  Gavin was brought to the ground, beaten and arrested.  [¶53].

17

Barker told Christopher that Christopher was not going anywhere, and Barker later ordered officers to get Christopher out of the home. [¶49]. Neither Christopher nor Gavin was free to leave on his/their own. The Castagnas have plausibly stated claims for false imprisonment against all officers.

### I. The Castagnas Have Plausibly Stated Claims for Assault and Battery (Count VI).

Defendants seek to dismiss the assault and battery claims against all but Edwards. [p. 18]. "Defendant Officers, acting in concert and using excessive force, pinned Christopher's left leg against the edge of his kitchen floor, and against the doorway of his bedroom, such that he suffered pain, as well as cuts and bruises on his leg." [¶50]. One Defendant Officer, believed to be Caucasian with brown hair, stepped on Christopher's neck deliberately, causing Christopher pain. *Id.* As to Gavin, one or more of the Defendant Officers assaulted Gavin. [¶¶51, 53]. One of the Defendant Officers kicked Gavin in the face, and some officers violently pulled Gavin's hands behind his back. [¶53]. Through discovery, the Castagnas may be able to identify all officers who assaulted Christopher and/or Gavin, and, further, which officers acted in concert. Plaintiffs have plausibly asserted assault and battery claims against all of the Defendant Officers.

### J. Plaintiffs Have Plausibly Alleged a Claim for False Arrest Against Defendant Officers in Count VII.

The Castagnas incorporate herein by reference their argument in Section B, *supra*.

### K. Plaintiffs Have Alleged All of the Necessary Elements for the Malicious Prosecution Claim Set Forth in Count VIII.

The four elements of common law malicious prosecution are as follows:

(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice.

*Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001). Defendants Jean and Haynes,

18

respectively, signed as complainants on the Applications for a Criminal Complaint pertaining to Christopher and Gavin, respectively.  [¶59-60].  Defendant DeVoe signed as complainant on the criminal complaints pertaining to both Plaintiffs.  [¶59, 60].  They did so without probable cause, and with improper purpose and actual malice in prosecuting Plaintiffs.  [¶106-107].  The cases were dismissed at the request of the Commonwealth, and so the termination was in favor of the Castagnas.  [¶62].  The Castagnas do not allege that DeVoe entered the Castagna home, but Haynes is listed as one of the Defendant Officers who went into the home.  [¶¶26, 30, 33,41].

The signing of a criminal complaint has serious consequences to a criminal defendant, and it cannot be taken lightly.

> [T]he malice necessary to be shown in order to maintain this [malicious prosecution] action, is not necessarily revenge or other base and malignant passion….That which is done contrary to one's own conviction of duty, or with a wilful disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means, or, in the language of the charge, to do a wrong and unlawful act knowing it to be such, constitutes legal malice.

*Limone*, 497 F.Supp.2d at 220;  *quoting Wills v. Noyes,* 29 Mass. 324, 328 (1832).  Under Massachusetts law, a jury may infer malice upon finding a want of probable cause.  *Seelig v. Harvard Coop. Soc'y*, 355 Mass. 532 (Mass. 1969).  Where the Castagnas have plausibly alleged the first three elements of a common law malicious prosecution claim, the presence of the fourth element may be inferred.  At the very least, the Castagnas seek modest discovery on this limited issue as that evidence is within the province of Defendants.

### L.  The Castagnas Have Plausibly Stated Claims for Intentional Infliction of Emotional Distress Where the Misconduct of the Defendant Officers in Taking Cellphones and Beating Plaintiffs was Severe and Outrageous (Count IX).

An intentional infliction of emotional distress claim requires:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and 'was

utterly intolerable in a civilized community;' (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was 'severe' and of a nature 'that no reasonable man could be expected to endure it.'

*Gouin v. Gouin*, 249 F.Supp.2d 62, 73 (D.Mass. 2003).   The Castagnas endured the intrusion

of armed police into their gathering – police who ignored the request to leave. [¶35].  The

Castagnas were attacked for using their cellphones.  An officer, believed to be Edwards, shut

off the lights, causing great fear in the home.  [¶46].  Christopher was separated from his

friends and brother by a threatening wall of police.  The Castagnas were beaten and arrested.

Other attendees were also attacked.  There can be no doubt as to the Castagnas' physical

injuries and emotional distress.  [¶¶63-68]  Christopher worries that the police compromised

his private cellphone data.  [¶67]. The conduct of the officers was extreme and outrageous.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss, except

as to the §1983 malicious prosecution claim.   To the extent that the Court is inclined to grant

Defendants' Motion to Dismiss, in whole or in part, on the ground that the Castagnas have failed

to plead with sufficient particularity that any particular Defendant Officer performed any

particular act, Plaintiffs respectfully request that this Court grant Plaintiffs leave to conduct such

reasonable discovery as is necessary to enable Plaintiffs to make more particularized

allegations[2].

---

[2] Plaintiffs are separately filing a motion seeking leave to take limited discovery, to the extent necessary.

20

The Plaintiffs,
Christopher Castagna and
Gavin Castagna
By Their Attorneys,


/s/ Paul J. Klehm_____
Paul J. Klehm (BBO# 561605)
*pklehm@kkf-attorneys.com*
Benjamin L. Falkner (BBO# 667951)
*bfalkner@kkf-attorneys.com*
Krasnoo, Klehm & Falkner LLP
28 Andover Street, Suite 240
Andover, MA  01810
(978) 475-9955

Dated:  July 5, 2016

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

and paper copies will be sent to those indicated as non-registered participants via first class

mail, postage prepaid, on July 5, 2016.


/s/Paul J. Klehm
Paul J. Klehm

21