UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTOPHER CASTAGNA and GAVIN CASTAGNA, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 15-cv-14208-IT |
| DARAN EDWARDS, ANTHONY TROY, JAY TULLY, KAMAU PRITCHARD, MICHAEL BIZZOZERO, KEITH KAPLAN, HARRY JEAN, and JAMES DOE, individually, | * * * * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

January 31, 2018

TALWANI, D.J.

I. Introduction

Plaintiffs Christopher Castagna and Gavin Castagna bring this action against various City of Boston police officers. Plaintiffs assert that Defendants violated their civil rights under the United States Constitution and 42 U.S.C. § 1983 by entering Christopher Castagna's home without a warrant, arresting both Plaintiffs without probable cause, using excessive force, failing to conduct a proper investigation, and interfering with a First Amendment right to videotape the action by unlawfully seizing cell phones, deleting videos to destroy evidence, and wrongfully attempting to access data in Christopher Castagna's cell phone. Third Am. Compl., ¶¶ 71-75 (Count 1) [#189]. Plaintiffs also bring claims under state law. Id. ¶¶ 76-108 (Counts 2-8). Pending before this court are Defendant Anthony Troy's Motion for Partial Summary Judgment [#149], Defendant Jay Tully's Motion for Partial Summary Judgment [#151], Defendant Michael Bizzozero's Motion for Partial Summary Judgment [#153], Defendant Harry Jean's Motion for

Partial Summary Judgment [#155], Defendant Keith Kaplan's Motion for Partial Summary
Judgment [#157], Defendant Daran Edwards' Motion for Partial Summary Judgment [#159], and
Defendant Kamau Pritchard's Motion for Partial Summary Judgment [#161].[1] For the reasons
that follow, each Defendant's motion is GRANTED IN PART and DENIED IN PART.

II. Factual Background

   A. *The Residence at Issue*

The events at issue took place at a property in South Boston owned by Christopher and
Gavin Castagna's father. Pls.' Response to Defs.' Statement of Undisputed Material Facts &
Pls.' Statement of Further Material Facts ["Pls.' SOF"] ¶ 2 [#176]. Christopher Castagna resided
at the property. Gavin Castagna resided there until he went to college in or around 2007. Pls.'
SOF ¶ 2. At the time of the events, Gavin resided elsewhere in South Boston with his father and
his father's wife, Defs.' Statement of Undisputed Material Facts ["Defs.' SOF"] ¶¶ 47-48 [#163],
but he visited the residence five or more times per week, slept in the extra bedroom in the
residence approximately three times per week (though not the night before the events in
question), and kept clothing in the extra bedroom closet, Pls.' SOF ¶ 2. Gavin had a key to the

---

[1] These motions were directed at Counts 1 through 9 of the Second Amended Complaint [#108].
After these motions were filed, the parties stipulated to dismissal of Count 9 in its entirety,
Partial Stip. Of Dismissal of Only Count IX (Intentional Infliction of Emotional Distress) of
Plaintiffs' Second Am. Compl. [#181], and partial dismissal of Count 8. Partial Stip. of
Dismissal of Only Pl. Gavin Castagna's Count VIII (Malicious Prosecution) Against Only Defs.
Bizzozero, Jean and Edwards [#182]; Partial Stip. of Dismissal of Only Pl. Christopher
Castagna's Count VIII (Malicious Prosecution) Against Only Defs. Troy, Tully and Pritchard
[#183]. After the hearing on the pending motions, Plaintiffs filed, and the court granted, an
Assented to Motion to Amend Complaint [#187]. Elec. Order [#188]. The Third Amended
Complaint [#189] added Harry Jean as a Defendant in Counts 1-4, 6, and 7, and deleted the
previously dismissed claims. The court treats the pending motions and the memoranda and
papers in support of, and opposition to, the motions as directed to the Third Amended Complaint
[#189].

residence, and Christopher permitted Gavin to enter and stay at the residence whenever he pleased. Id.

### B. The Police Officers' Entries into the Residence

On March 17, 2013, after receiving a dispatch call regarding a loud party, Kaplan, Edwards, and Jean, along with three other police officers, (the "first wave officers") arrived and entered the residence. Defs.' SOF ¶ 1; Pls.' SOF Response ¶ 1. Whether that initial entry was lawful is disputed and is not the subject of the pending motions.

At some point after entry, Kaplan called dispatch and requested assistance. Pls.' SOF ¶ 10. Nine officers, including Troy, Tully, Pritchard, and Bizzozero responded to Kaplan's call. Pls.' SOF ¶ 11. These "second wave officers" entered the home to provide assistance, but did not know why assistance had been requested. Defs.' SOF ¶¶ 6, 20, 43, 45. Kaplan, who had requested the additional officers so that he could obtain additional handcuffs, was surprised by the number of officers who arrived. Pls.' SOF ¶ 10.

### C. The Events in the Residence

Christopher and Gavin Castagna and others were in Christopher's bedroom when the first wave of police arrived. Pls.' SOF ¶ 5. Those officers removed Christopher from his bedroom, and multiple party-goers, including Gavin, began videotaping the interaction and verbally protesting the police entry. Pls.' SOF ¶ 6.

The lights subsequently went off in the kitchen where Gavin was standing. Pls.' SOF ¶¶ 6-7. Christopher was brought downstairs, and at some point as Christopher was being arrested, the second wave of officers arrived. Some of the second wave officers, including, at various times, Tully, Pritchard, and Bizzozero, surrounded Castagna as first wave officers Edwards, Kaplan, and Jean attempted to arrest him. Pls.' SOF ¶¶ 7-8; Statement of Undisputed Material Facts (With Pls.' Responses to Defs.' Facts & Defs.' Responses to Pls.' Additional

3

Facts Incorporated Herein [Defs.' Response to Pls.' SOF"] ¶ 7 [#184]; Pls.' SOF Response ¶ 49. The altercation became physical. Christopher Castagna alleges that Bizzozero, Jean, Edwards, and Kaplan, as well as an unidentified "motorcycle cop," had physical contact with him. Defs.' SOF ¶ 12; Pls.' SOF Response ¶ 22; Pls.' SOF ¶ 9. None of the civilian witnesses could identify which Defendants were involved. Defs.' SOF ¶¶ 27-28, 30, 32, 34, 36, 38-39, 41. Troy did not recall seeing Christopher Castagna at all and denies having any physical contact with him. Defs.' SOF ¶¶ 9-10; Pls.' Response to Defs.' SOF ¶ 9. Christopher Castagna was arrested, but the criminal charges against him were later dismissed. Pls.' SOF ¶ 23.

Shortly after the second wave of police officers entered, Gavin Castagna was also involved in a physical altercation that culminated in his arrest. Pls.' SOF ¶¶ 13-14. Gavin Castagna asserts that Pritchard and Tully were involved in his arrest, but admits that Bizzozero was not involved in placing him in handcuffs. Defs.' SOF ¶¶ 22-23; Pls.' SOF Response ¶ 22. None of the civilian witnesses to this altercation could recall or identify which Defendants were involved. Defs.' SOF ¶¶ 27, 29, 31, 33, 35, 37-38, 40, 42. Gavin Castagna was arrested, but the criminal charges against him were later dismissed. Pls.' SOF ¶ 23.

During the course of his arrest, Gavin Castagna lost both his and Christopher Castagna's phones (which Gavin had been using to film the events), but did not see what happened to them. Defs.' SOF ¶¶ 13-17; Pls.' SOF ¶ 14. Neither Gavin nor Christopher Castagna saw any officers take Christopher's phone. Defs.' SOF ¶¶ 16-18. A guest at the party also did not see any police officer in possession of either Christopher or Gavin Castagna's cell phones. Defs.' SOF ¶ 26.

After the arrests, guests found a number of phones, including Gavin Castagna's phone, in a trash can at the residence. Pls.' SOF ¶¶ 16, 18, 22. The video on Gavin Castagna's phone had been deleted. Pls.' SOF ¶ 18. Additionally, another guest, who had recorded the incident,

4

testified that his phone was missing from the residence when he went inside to retrieve it. Pls.' SOF ¶ 18. And another guest's phone was found in the trash along with Gavin Castagna's phone, and his video of the incident had also been deleted. Pls.' SOF ¶ 16.

III.     Summary Judgment Standard

In resolving a motion for summary judgment, the court takes all properly supported evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotation marks and citations omitted).

IV.     Analysis

Plaintiffs assert two types of claims in their Third Amended Complaint: (1) claims that throughout the evening in question, the Defendants engaged in an overarching, common-law conspiracy to violate their federal and state civil rights (Counts 2 and 4), and (2) claims that each Defendant's individual conduct amounted to a violation of their federal and state civil rights (Counts 1, 3, and 5-7). First, the court considers whether the undisputed facts could lead a reasonable jury to conclude that an overarching conspiracy existed. The court then turns to whether the Defendants' individual conduct amounts to a violation of federal and/or state civil rights.

   A. *Conspiracy Claims Regarding Officers' Conduct*

Under Massachusetts law, two types of civil conspiracy exist: a coercive conspiracy, or an anticipatory agreement conspiracy. Plaintiffs' claims rest on this second type of conspiracy. To allege an anticipatory agreement conspiracy, a plaintiff must show "first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994). This second type "is more akin to a theory of common law joint liability in tort," and "is invoked to support liability of one person for a tort committed by another." Id.

Even accepting Plaintiffs' version of events, Plaintiffs have not shown facts to support an anticipatory agreement to deprive either Plaintiff of his constitutional rights. First, the mere assertion that Jean, Kaplan, and Edwards walked into the residence without probable cause, permission, or exigent circumstances, without more, does not point to an anticipatory agreement. There are no facts showing any agreement between these Defendants about what to do when they arrived at the residence, and Kaplan testified that he formed his belief about the possibility of underage drinking on his own. Additionally, there is no evidence of an agreement to attack or arrest Christopher or Gavin Castagna once Jean, Edwards, and Kaplan had entered the residence. At best, the facts show that Jean and Edwards followed Kaplan's lead by entering the home, and that they assisted each other in arresting Christopher Castagna. Further, the statement allegedly made in the residence by an unidentified officer that "they have cell phones, come in hard," is not evidence of an anticipatory agreement with or amongst the second wave officers, where there is no evidence that any officer heard the alleged statement. Without more, the mere fact that multiple partygoers were involved in physical altercations with police at the residence shortly after the second wave officers arrived does not show an anticipatory agreement. Accordingly,

summary judgment is GRANTED as to all Defendants with respect to both Plaintiffs' claims in Counts 2 and 4.

### B. Claims Regarding Officers' Entry to the Residence: Count 1(a)

Count 1(a) alleges that Defendants violated § 1983 by unlawfully entering the residence in violation of the Fourth Amendment. Defendants assert that Gavin Castagna does not have standing to assert a Fourth Amendment unlawful entry claim, as he was neither living at nor an overnight guest at the residence at the time of the incident. Further, the second wave officers—Defendants Troy, Tully, Pritchard, and Bizzozero—argue that their entry was not unlawful based on exigent circumstances.

#### 1. Gavin Castagna's Standing

To bring a claim for unlawful entry, a plaintiff must first show that a search occurred within the meaning of the Fourth Amendment. "[A] search occurs whenever the government intrudes upon any place in which a person has a 'reasonable expectation of privacy.'" United States v. Bain, 874 F.3d 1, 12 (1st Cir. 2017) (citing Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). This determination is broken into two steps. First, the court must consider "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he [sought] to preserve [something] as private." Id. (internal quotation marks and citation omitted). Next, the court must determine "whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." Id. (citation omitted).

Defendants argue that Gavin Castagna cannot assert an unlawful entry claim because he has no reasonable expectation of privacy in the residence. Courts have long recognized an overnight guest's expectation of privacy. See, e.g., Minnesota v. Olson, 495 U.S. 91, 96-97 (1990); United States v. Bain, 874 F.3d 1, 13 (1st Cir. 2017); United States v. Romain, 393 F.3d

7

63, 68 (1st Cir. 2004). Defendants seek to distinguish these cases on the grounds that Gavin Castagna did not stay at the residence on the evening before the search.

The parties do not dispute that at the time of the incident, Gavin Castagna lived with his father, and that on the morning of the incident, Gavin Castagna woke up at his own house, not the residence. But even though Gavin Castagna did not spend the night immediately before the arrests at the home, by his account he had a key to the residence, came and went as he wanted, kept personal belongings there, visited five or more times per week, and slept there approximately three times per week. Those facts, if established at trial, demonstrate a relationship to the residence more akin to an overnight guest than a temporary visitor, and thus support a reasonable expectation of privacy in that residence. See United States v. Pollard, 215 F.3d 643, 645, 647 (6th Cir. 2000) (holding that frequent guest who kept personal belongings at residence had reasonable expectation of privacy in that residence); United States v. Rhiger, 315 F.3d 1283, 1285-86 (10th Cir. 2003) (holding that guest who had previously stayed overnight two to four times, and on date in question entered home without owner present to take a nap, had reasonable expectation of privacy in that residence).

To the extent that Defendants' motions for summary judgment are directed to Gavin Castagna's lack of standing, they are DENIED.

    2.  Exigent Circumstances and Qualified Immunity

Defendants Troy, Tully, Pritchard, and Bizzozero (the second wave officers) argue further that their warrantless entry was permissible under the exigent circumstances doctrine, and moreover, that they are entitled to qualified immunity.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor v. Barkes, 135 S. Ct. 2042, 2044 (2015) (quotation marks and

citation omitted). A government official is not subject to liability for civil damages under § 1983 "if the action complained of did not violate a clearly established right to which a reasonable officer would have understood that the plaintiff was entitled." McInnis v. Maine, 638 F.3d 18, 22 (1st Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 555 U.S. at 231. Qualified immunity applies to mistakes of law, fact, or mixed questions of law and fact. Id. (citing Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

To determine whether a government official is entitled to qualified immunity, courts ask three questions: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right." Cox v. Hainey, 391 F.3d 25, 29-30 (1st Cir. 2004) (quotation marks and citation omitted).

As to the first question, "[i]t is a well-established principle of Fourth Amendment law that warrantless searches inside a home are presumptively unreasonable." United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005). However, officers may nevertheless conduct a warrantless entry when they face "exigent circumstances." United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995). The government must prove the existence of exigent circumstances by showing with "particularized, case-specific facts," United States v. Hidalgo, 747 F. Supp. 818, 828 (D. Mass. 1990), that "the police . . . reasonably believe[d] that 'there [was] such a compelling necessity for immediate action as [would] not brook the delay of obtaining a

9

warrant.'" Samboy, 433 F.3d at 158 (quoting Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999)); see also Kentucky v. King, 563 U.S. 452, 470 (2011) ("Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency.").

Under a subset of the exigent circumstances doctrine, referred to as the "emergency aid" doctrine, "the police, in an emergency situation, may enter a residence without a warrant if they reasonably believe that swift action is required to safeguard life or prevent serious harm." United States v. Martins, 413 F.3d 139, 147 (1st Cir. 2005) (citation omitted). To marshal this doctrine, "the government must show a reasonable basis, approximating probable cause, both for the officers' belief that an emergency exists and for linking the perceived emergency with the area or place into which they propose to intrude." Id. Courts considering whether the government has met its burden must consider "the totality of the circumstances confronting the officers, including, in many cases, the need for an on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences." Id.

Defendants Troy, Tully, Pritchard, and Bizzozero argue that they responded to Kaplan's call for assistance and that they had a reasonable belief that their entry was required to safeguard life or prevent serious harm. Troy, Tully, and Bizzozero responded to the residence after receiving Kaplan's call for assistance, and Pritchard responded to the residence after what he believed to be an in-need-of-assistance call. The undisputed facts show that Kaplan requested assistance over the police radio (and did not specify that he only needed additional handcuffs). With information only that an officer requested assistance, and without information indicating that no emergency existed, a reasonable police officer who needed to make a split-second decision would enter the home to determine whether violence has or soon will occur. See Georgia v. Randolph, 547 U.S. 103, 118 (2006).

Plaintiffs argue that Defendants' actions were nonetheless unconstitutional because the allegedly unlawful entry of the first wave of officers, including Jean, Edwards, and Kaplan (the "first wave officers"), tainted the subsequent entry of the second wave of officers. Plaintiffs' argument is akin to a "fruit of the poisonous tree" argument that might be made in connection with a motion to suppress in a criminal proceeding, where that "judicially created remedy [is] designed to safeguard Fourth Amendment rights generally through its deterrent effect." United States v. Calandra, 414 U.S. 338, 348 (1974). Plaintiffs offer neither authority nor persuasive argument for applying this remedial device in the context of a § 1983 action.

Plaintiffs argue further that the first entry taints the second entry because of the "collective knowledge doctrine." See Morelli v. Webster, 552 F.3d 12, 17 (1st Cir. 2009). The collective knowledge doctrine "is a mechanism that in some circumstances allows a court to 'impute' facts known by one police officer to another police officer engaged in a joint mission.'" Morelli, 552 F.3d at 17 (citing United States v. Meade, 110 F.3d 190, 193 (1st Cir. 1997)). For purposes of summary judgment, Defendants do not claim that the first wave officers believed any exigent circumstances existed at the time of entry to the residence. Thus, Plaintiffs argue that the first wave officers entered without any exigent circumstances, and the knowledge of the first wave officers should be imputed to the second wave officers, and as a result, the second wave officers knew no exigent circumstances existed. But no evidence indicates a joint mission existed, as required for application of the collective knowledge doctrine. See Morelli, 552 F.3d at 17 (allowing for application of the doctrine where officers are engaged in a joint mission).[2]

---

[2] Plaintiffs also argue that the Defendants' emergency aid justification is nothing more than a post-hoc justification or "manufactured evidence." However, their reliance on United States v. Martins for this proposition is misplaced. In Martins, the court was concerned with whether officers had manipulated events at the time of the entry to "conjure up an emergency." 413 F.3d

In any event, Plaintiffs' claims are barred under the second and third prong of the qualified immunity defense even if a jury could find the second wave officers' warrantless entry here in response to an officer's request for assistance to rise to the level of a constitutional violation. The facts do not indicate that a reasonable officer, similarly situated to Troy, Tully, Bizzozero, and Pritchard, would have understood that warrantless entry in response to an officer's request for assistance to contravene Plaintiffs' constitutional rights. Accordingly, summary judgment is GRANTED as to Count 1(a) with respect to both Christopher and Gavin Castagna's claims against Defendants Troy, Tully, Bizzozero, and Pritchard.

### C. Claims Regarding Officers' Conduct Inside the Residence: Counts 1(b)-(c), 3, 5-7

Plaintiffs also bring a § 1983 claim, as well as multiple state law claims, regarding the officers' conduct inside the residence. See Third Am. Compl. Counts 1(b)-(c), 3, 5-7 [#189]. Much of what happened in the residence on the night in question is disputed. Defendants Troy, Tully, Pritchard, and Kaplan argue, however, that because the undisputed facts show that they did not have physical contact with Christopher Castagna, each of these claims against them must fail. Defendants Bizzozero, Jean, Edwards, and Kaplan make the same argument with respect to Gavin Castagna. In responding to Defendants' argument that a lack of physical contact defeats each of these claims, Plaintiffs argue that they should survive under a joint venture theory.

Under a joint venture theory, "onlooker officers and the aggressor officer are essentially joint tortfeasors and, therefore, may incur shared constitutional responsibility." Martinez v. Colon, 54 F.3d 980, 985 n.4 (1st Cir. 1995). A plaintiff need not establish an anticipatory agreement, but mere presence is insufficient; a plaintiff must prove that the defendant "associated himself with the venture, participated in it as something he wished to bring about,

---

139, 149 (1st Cir. 2005). By contrast, Plaintiffs here complain that Defendants are now exaggerating the circumstances presented to the second wave officers to justify their entry.

12

and sought by his actions to make it succeed." Wilson v. Town of Mendon, 294 F.3d 1, 15 (1st Cir. 2002) (quoting United States v. Garcia-Rosa, 876 F.2d 209, 217 (1st Cir. 1989)).

With respect to Troy, Tully, and Pritchard, although no facts indicate that they had physical contact with Christopher, accepting Plaintiffs' version of the facts shows that both Tully and Pritchard helped form a barrier of "ten or more officers" who "surrounded Christopher in order to separate him from everyone else." Further, these facts show that Troy engaged in a physical altercation with another partygoer who was attempting to videotape Christopher's arrest. Viewing these facts in the light most favorable to Plaintiffs, a reasonable jury could conclude that Troy, Tully, and Pritchard assisted the officers using physical force on Christopher in placing Christopher in a vulnerable position, and thus engaged in a joint venture. Cf Wilson, 294 F.3d at 14-15. Accordingly, summary judgment is DENIED with respect to Christopher Castagna's claims against Defendants Troy, Tully, and Pritchard.

With respect to Kaplan, Plaintiffs' facts support the claim that Kaplan did have physical contact with Christopher Castagna—Kaplan admits involvement in moving Christopher's arms behind his back, and placing Christopher Castagna on the ground. What is disputed is the extent and nature of their physical contact while Christopher was on the ground. Because those disputed facts are material to whether Kaplan used excessive force in executing Christopher's arrest, summary judgment is DENIED with respect to Christopher Castagna's claims in Counts 1(b)(-c), 3, and 5-7 against Defendant Kaplan.

Finally, with respect to Bizzozero, Jean, Kaplan, and Edwards, the undisputed facts show that none of those Defendants physically contacted Gavin Castagna, and that they were all involved in Christopher's arrest. Therefore, they could not have participated in contact with or arrest of Gavin, or assisted the other officers in placing Gavin in a vulnerable position.

Accordingly, summary judgment is GRANTED with respect to Gavin Castagna's claims in Counts 1(b)(-c), 3, and 5-7 against Defendants Bizzozero, Jean, Edwards, and Kaplan.

### D. Claims Regarding Officers' Seizure of Cell Phones—Counts 1(f) & 1(g)

Finally, Plaintiffs assert two claims against all Defendants regarding the seizure of, and attempts to access data in, their cell phones. Defendants argue that because no witnesses can identify any police officer—let alone one of the Defendants—who was in possession of either Plaintiff's cell phone, Plaintiffs' claims must fail.

Under the Fourth Amendment, a warrantless search or seizure is per se unreasonable, unless one of several exceptions applies. See Arizona v. Gant, 556 U.S. 332, 338 (2009); Terry v. Ohio, 392 U.S. 1, 20 (1968) ("[T]he police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure."). One such exception is a seizure incident to a lawful arrest. For an arrest to be lawful, it must be based on probable cause, which exists when "police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." United States v. Burhoe, 409 F.3d 5, 10 (1st Cir. 2005) (quoting United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997)).

With respect to searches of data on cell phones, "officers must generally secure a warrant before conducting such a search," "even when a cell phone is seized incident to arrest." Riley v. California, 134 S. Ct. 2473, 2485, 2493 (2014). As the First Circuit observed in United States v. Henry, the Supreme Court in Riley suggested that generally, officers should "seize the phones to prevent destruction of evidence but obtain a warrant before searching the phones." 827 F.3d 16, 28 (1st Cir. 2016). However, "other case-specific exceptions may still justify a warrantless search of a particular phone," such as "the exigencies of the situation," including "the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and

14

to assist persons who are seriously injured or are threatened with imminent injury." Riley, 134 S. Ct. at 2494 (stating that "unlike the search incident to arrest exception, the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case").

Defendants argue that because no witness knows who took Christopher and Gavin Castagna's phones, or saw a police officer holding either phone, Plaintiffs' claims are too speculative to survive summary judgment. It is undisputed that Gavin Castagna did not see what happened to his cell phone during the course of his arrest, and that he did not see any police officer in possession of his phone. However, Gavin believes that officers seized his phone because "they are the only ones who could benefit from it disappearing." Similarly, Christopher Castagna did not see any police officer in possession of his phone. The parties dispute, however, whether Defendants attempted to take away Plaintiffs' phones prior to their arrests, and whether they used force to take the cell phones away. For example, they dispute whether an officer said on a radio or cell phone that Plaintiffs and other party-goers "have phones out. Come in hard." They further dispute whether Troy and Tully targeted party-goers, including Feltch, who were videotaping. Also disputed is whether Edwards tried to take Christopher Castagna's phone, and whether Edwards' actions led Christopher to hand his phone to another guest. Further, the parties dispute whether Pritchard knocked Gavin's phone out of his hands, and whether Tully struck Gavin shortly thereafter. Finally, they dispute whether Kaplan told Christopher Castagna that Christopher was required to tell police officers if he was videotaping them.

Based on this evidence, a reasonable jury viewing the evidence in the light most favorable to Plaintiffs could conclude that the Defendants engaged in a joint venture to seize

Plaintiffs' cell phones and destroy the videos on them. Accordingly, summary judgment is DENIED as to Counts 1(f) and 1(g) with respect to both Plaintiffs' claims against all Defendants.

V. Conclusion

For the foregoing reasons, Defendant Anthony Troy's Motion for Partial Summary Judgment [#149], Defendant Jay Tully's Motion for Partial Summary Judgment [#151], and Defendant Kamau Pritchard's Motion for Partial Summary Judgment [#161] are GRANTED with respect to both Plaintiffs' claims in Counts 1(a), 2, and 4, and DENIED in all other respects. Defendant Michael Bizzozero's Motion for Partial Summary Judgment [#153] is GRANTED with respect to both Plaintiffs' claims in Counts 1(a), 2, and 4, GRANTED with respect to Gavin Castagna's claims in Counts 1(b), 1(c), 3, 5-7, and DENIED in all other respects. Defendant Harry Jean's Motion for Partial Summary Judgment [#155], Defendant Keith Kaplan's Motion for Partial Summary Judgment [#157], and Defendant Daran Edwards' Motion for Partial Summary Judgment [#159] are GRANTED with respect to Gavin Castagna's claims in Counts 1(b), 1(c), 3, 5-7, and DENIED in all other respects.

IT IS SO ORDERD.

Date: January 31, 2018  /s/ Indira Talwani
United States District Judge